UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

DANNY ELLIOTT )
 )
V. ) NO. 2:10-CV-51
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation, regarding the denial by the Commissioner of the plaintiff's application for Supplemental Security Income under the Social Security Act. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 8 and 12].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision

must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 47 years of age at the time of his hearing before the Administrative Law Judge. He has a "limited" education and no past relevant work experience. He has various severe impairments, including being status post lumbar fusion, degenerative disc disease of the cervical and lumbar sping, mild teninopathy and osteoarthritis of the right shoulder, status post bilateral carpal tunnel release, arthralgias, plantar fascitis and multiple ventral hernia repairs.

Plaintiff does have a considerable medical history which the defendant Commissioner summarizes in his brief as follows:

> Plaintiff underwent right carpal tunnel release surgery in April 2003 and left carpal tunnel release surgery the next month (Tr. 280, 282). He reported to Dr. Stuart Patterson, his surgeon, in December 2003 that he had done well following the surgeries (Tr. 278).
> In January 2004, approximately a year before Plaintiff's alleged onset of disability date, Plaintiff presented to Dr. Campanelli with complaints of a long history of back and neck pain with increased pain on movement, ambulation, or long periods of sitting (Tr. 174). Plaintiff reported radiation of the pain to his left leg with some paresthesias (tingling, pricking, or numb sensation) in the left foot (Tr. 174). Plaintiff had full strength in his extremities and a full range of motion in his cervical spine, extremities, and torso (Tr. 175). Dr. Campanelli diagnosed degenerative disc disease, most prominent at L5-S1, and ordered an MRI in anticipation of lumbar spine surgery (Tr. 175). Dr. Campanelli performed a lumbar spine fusion on Plaintiff that month and he was discharged five days later (Tr. 175, 201-02, 372-73).
> During a follow-up appointment the next month, Dr. Campanelli recommended that Plaintiff wear a back brace and use a bone growth stimulator (Tr. 166). In March 2004, Plaintiff presented to Dr. Campanelli for follow-up appointment to his lumbar spine surgery (Tr. 165). Dr. Campanelli noted that following his surgery, Plaintiff

was hospitalized for an incision wound
infection and had been under the management of trauma services for a wound abscess (Tr. 165, 408-11, 413-20, 507-10). Plaintiff complained of intermittent low back discomfort relieved with rest (Tr. 165). On examination, Plaintiff ambulated with a steady gait, had full flexion and side-to- side bending, and displayed minimal tenderness to the touch in his lower back muscles (Tr. 165). Dr. Campanelli recommended that Plaintiff wear a bone stimulator and restrict his activities to walking (Tr. 165).

Plaintiff presented to Dr. Campanelli twice in April and May 2004 for follow-up appointments to his lumbar spine fusion with complaints of continued back pain, but at a reduced level (Tr. 162-63). Plaintiff initially reported pain in his legs, but later stated that he had no radicular pain (Tr. 162-63). Plaintiff had a normal gait and leg strength and Dr. Campanelli recommended that he continue to use a bone growth stimulator and prescribed pain medication (Tr. 162-63). Plaintiff returned to Dr. Campanelli in August 2004 for follow-up to his lumbar
spine surgery and reported that he had improved back pain and leg numbness (Tr. 160). On examination, Plaintiff had a normal gait, was able to stand on his heel or toes, and displayed a negative straight leg raising test (Tr. 160). Dr. Campanelli ordered lumbar x-rays, prescribed pain medication and a muscle relaxant, and advised Plaintiff to continue using a bone growth stimulator for three months, after which he could resume his normal activities (Tr. 160). The x-ray showed that Plaintiff's lumbar spine was stable (Tr. 161).

In October 2004, Plaintiff presented to Dr. Ramesh Shah for treatment of an incisional hernia (Tr. 245). Dr. Shah recommended a repair procedure, which Plaintiff underwent at the end of October 2004 (Tr. 245). Plaintiff returned to Dr. Shah for several follow-up visits in November 2004, and by the end of that month, Dr. Shah noted that the surgical wound was healed (Tr. 245-46).

In May 2005, Dr. Herminio Cuervo, a neurologist, examined Plaintiff for the Florida Office of Vocational Rehabilitation due to complaints of headaches (Tr. 472-74). Plaintiff reported that he was seen in the hospital two months previously due to headaches and that CT scans of his head and brain were normal (Tr. 431-34, 439, 472). Dr. Cuervo noted that Plaintiff's medical history included Hepatitis C infection, congenital L5/S1 spinal stenosis, small disc protrusions at C3-4 to C6-7, a lumbar fusion in 2004, abdominal hernia repair, and a bilateral carpal tunnel release performed in 2002 (Tr. 472). Plaintiff stated that his headaches were accompanied by nausea, vomiting and right face and arm numbness (Tr. 472). After an examination, Dr. Cuervo diagnosed migraine headaches that may have been triggered by noncompliance with blood pressure medication (Tr. 474).

In October 2005, Plaintiff presented to Dr. Anand Rao for an examination due to a possible recurrent hernias (Tr. 196-97). Dr. Rao noted on examination that Plaintiff had a recurrent incisional hernia and recommended surgery (Tr. 197). Plaintiff returned for a followup examination later that month with two areas of swelling and Dr. Rao ordered a CT scan to identify any recurrent hernias (Tr. 198). Following the CT scan (Tr. 194-95), Dr. Rao performed surgery to repair two

recurrent hernias in November 2005 (Tr. 192-93). During two follow-up appointments that month, Plaintiff reported soreness in the surgical site, but was otherwise doing well (Tr. 190-91).

In March 2006, Plaintiff presented to Nurse Michael Strickland with complaints of headaches, neck and right shoulder pain, and an abdominal hernia (Tr. 224). Nurse Strickland ordered cervical spine and right shoulder x-rays (Tr. 224). Later that month, Plaintiff returned to Dr. Rao, who found on examination that Plaintiff had a recurrent incisional hernia (Tr. 189). Dr. Rao performed a hernia repair at the end of March 2006 (Tr. 186-87).

In May 2006, Plaintiff presented to Dr. E. Pena, a physician, for a follow-up appointment (Tr. 223). Dr. Pena noted no examination findings except for decreased shoulder range of motion (Tr. 223). Dr. Pena prescribed medications for pain and Plaintiff's hypertension and ordered MRIs of Plaintiff's right shoulder and cervical spine (Tr. 223). The cervical spine MRI revealed a bone spur and disc bulge at C6-7 causing flattening of the spinal cord and disc bulging at C5-6 contacting the spinal cord, but causing no stenosis (narrowing) (Tr. 204-05). The right shoulder MRI showed mild tendinopathy and osteoarthritis (Tr. 203).

Plaintiff presented to Nurse Strickland in May 2006 with complaints of pain in the site of his hernia repair (Tr. 222). Nurse Strickland referred him to Dr. Rao (Tr. 222). Plaintiff presented to Dr. Rao in June 2006 with complaints of swelling in the upper part of his incision, and after an examination, Dr. Rao diagnosed a hernia (Tr. 181-83). Later that month, Plaintiff presented to Dr. Pena with complaints of neck and shoulder pain and abdominal hernia symptoms (Tr. 221). Dr. Pena prescribed pain medication and referred Plaintiff for a neurosurgery consultation (Tr. 221). At the end of June 2006, Plaintiff underwent hernia repair surgery (Tr. 178-79). Plaintiff returned to Dr. Pena in July 2006 with complaints of right shoulder pain and Dr. Pena continued his medications (Tr. 220).

In August 2006, Plaintiff presented to Dr. Campanelli with complaints of cervical pain with radicular symptoms into his right shoulder (Tr. 159). On examination, Plaintiff had a normal gait, a full range of cervical motion, and normal upper extremity strength (Tr. 159). Dr. Campanelli reviewed Plaintiff's recent cervical spine MRI and opined that a surgical decompression was not indicated (Tr. 159). He prescribed pain medication and referred Plaintiff to an orthopedic surgeon to examine his shoulder (Tr. 159). Later that month, Plaintiff presented to Dr. H. Patheja, a physician in Dr. Pena's office, for a follow-up appointment (Tr. 219). Dr. Patheja prescribed pain medication and referred Plaintiff to an orthopaedic surgeon for his right shoulder pain (Tr. 219).

Plaintiff presented to Dr. Rao in September 2006 with complaints of some pain and swelling due to a possible recurrent hernia (Tr. 176). Dr. Rao noted mild weakness of the abdominal wall, but no recurrent hernia (Tr. 176). Dr. Rao advised Plaintiff to perform restricted work (Tr. 176).

In October 2006, Plaintiff presented to Dr. Patheja with continuing complaints of neck pain despite a recent cortisone shot to his right shoulder and requested a second opinion from a surgeon regarding a possible hernia (Tr. 218). Dr. Patheja prescribed

4

pain medication and referred Plaintiff to another surgeon (Tr. 218). Plaintiff presented to Dr. Stephen Butler in November 2006 for treatment of multiple incisional hernias and Dr. Butler recommended surgery (Tr. 210). Plaintiff returned to Dr. Patheja later that month with new complaints of bilateral ankle pain and Dr. Patheja prescribed pain medication and ordered ankle x-rays (Tr. 217). In December 2006, Plaintiff stated to Dr. Patheja that he was out of pain medication and had severe pain (Tr. 216). Dr. Patheja noted that Plaintiff had a decreased range of right shoulder motion and prescribed a muscle relaxant (Tr. 216).

In December 2006, Dr. Butler performed a multiple incisional hernia repair and Plaintiff was discharged from the hospital five days later (Tr. 212-13, 505). In January 2007, Plaintiff presented to Dr. Jill Roehr for a follow-up to his hernia surgery (Tr. 208). Dr. Roehr noted that Plaintiff appeared quite well and was moving easily; she removed his surgical staples (Tr. 208). Later that month, Plaintiff returned to Dr. Patheja with complaints of right shoulder and abdominal pain (Tr. 214). Dr. Patheja noted that Plaintiff had a reduced range of right shoulder motion due to pain and prescribed pain medication (Tr. 214).

Plaintiff presented to Dr. Breuggeman that day with complaints of heel pain (Tr. 444). Dr. Breuggeman reported that x-rays revealed positive calcaneal spurs in the feet and after an examination, diagnosed plantar fasciitis/heel spur syndrome (Tr. 206, 444). Dr. Breuggeman prescribed pain medication and recommended stretching and foot baths (Tr. 444). Plaintiff returned the next month with continuing heel pain, worse on the right, and Dr. Breuggeman switched his pain medication and injected medication into the right heel (Tr. 443). Plaintiff reported later that month that the injection only helped for a short period and Dr. Breuggeman provided another injection (Tr. 442).

In February 2007, Plaintiff presented to Dr. Butler for a follow-up appointment and requested work restrictions (Tr. 207). Dr. Butler noted no problems on examination and advised Plaintiff to resume activities as able (Tr. 207).

Plaintiff presented to physician's assistant Christy McGhee in September 2007 with complaints of right foot and right shoulder pain (Tr. 519). Plaintiff had tenderness at the plantar heel and a full range of shoulder motion with pain at the extremes of motion (Tr. 519). Plaintiff had tenderness on an impingement test and some tenderness over the AC joint, but no shoulder instability (Tr. 518). A right foot x-ray showed a small plantar calcaneal spur, but no other bony changes (Tr. 518). A right shoulder x-ray showed mild AC joint arthritic changes (Tr. 518). Ms. McGhee diagnosed right plantar fasciitis (inflamation of tissue at the bottom of the foot) and right rotator cuff tendinitis and recommended using ice and anti-inflammatory drugs for the foot and physical therapy for the shoulder and foot (Tr. 518). Ms. McGhee also performed a right shoulder steroid injection (Tr. 517).

Plaintiff returned to Ms. McGhee in October 2007 and reported that the injection improved, but did not eliminate, his shoulder pain (Tr. 516). Plaintiff walked with a limp on the right; had tenderness to the touch in his right foot; displayed a full range of right shoulder motion with decreased strength; and had right shoulder tenderness to pressure along the joint line and a positive impingement sign (Tr. 516).

Ms. McGhee opined that Plaintiff had, at a minimum, right shoulder rotator cuff tendonitis with possible injury to the supraspinatus tendon and plantar fasciitis (Tr. 516). Ms. McGhee performed a right heel injection and otherwise continued conservative treatments (Tr. 514-15). The next month, Plaintiff returned to Ms. McGhee and reported that the injection alleviated his heel pain for a week, but that it then returned (Tr. 514). Plaintiff also reported new left foot symptoms (Tr. 514). On examination, Plaintiff walked without a limp, but still had foot tenderness; Ms. McGhee recommended that Plaintiff use a splint and continue all other conservative treatment (Tr. 514).

Plaintiff presented to Nurse Rene Pippin at the Tennessee Department of Health in January 2008 requesting medication for chronic back pain and hypertension (Tr. 457). Plaintiff was tender at the lumbosacral region, but a straight leg raising test was negative and Plaintiff had no lower extremity weakness (Tr. 457). Nurse Pippin provided a muscle relaxant and hypertension medication (Tr. 457).

In March 2008, Dr. Krish Purswani examined Plaintiff for the state disability determination service (DDS) (Tr. 153-58). Plaintiff reported a seven-year history of lower back pain that radiated to his knees and was aggravated by lifting, "lying crooked", sitting for more than 30 minutes, and standing (Tr. 153). He also reported neck pain, bilateral foot pain, pain due to an abdominal hernia, and bilateral shoulder pain with difficulty using his right arm (Tr. 153). On examination, Plaintiff had a slightly antalgic gait with a normal station and was able to get onto and off of the examination table with no help (Tr. 155). He had a normal range of motion in his shoulders, wrists, knees, and ankles and normal feet with reported tenderness to the touch (Tr. 154-55). Dr. Purswani opined that Plaintiff could lift 30 pounds from the floor level for half of an eight-hour workday due to chronic low back pain, chronic neck pain, degenerative disc and
joint disease in his neck, osteoarthritis in his right AC joint, and bilateral plantar fasciitis (Tr. 157). Dr. Purswani also opined that due to those disorders, Plaintiff could stand and walk with breaks for a total of six hours in a workday and could sit for an entire workday (Tr. 157-58).

In April 2008, Dr. Reeta Misra reviewed Plaintiff's records for the state DDS and opined that he could occasionally lift and carry 50 pounds, frequently lift and carry 25 pounds, stand or walk and sit for six hours per workday, and only occasionally climb ladders, ropes, and scaffolds (Tr. 249-50). Dr. Joe Allison also reviewed Plaintiff's records for the state DDS and provided the same opinion in July 2008 (Tr. 256-63).

Plaintiff returned to Nurse Pippin in October 2008 with complaints of neck and shoulder pain with loss of feeling in his hands (Tr. 456). Plaintiff had finger swelling and decreased sensation and reduced grip strength (Tr. 456). Nurse Pippin provided pain medication and an anti-inflammatory drug (Tr. 456). Plaintiff presented to Nurse Pippin in December 2008 with complaints of knee pain for the past week when walking or straightening the knee (Tr. 455). Plaintiff walked with a limp and had a normal range of knee motion with pain on movement (Tr. 455). The nurse recommended pain medication (Tr. 455).

[Doc. 13, pgs. 2-10].

Plaintiff testified at his administrative hearing. He was questioned by both his counsel and the ALJ. Although a vocational expert was present during the hearing, upon the conclusion of the plaintiff's testimony the ALJ elected not to elicit testimony from the V. E.

In his hearing decision, the ALJ evaluated the medical evidence along with the plaintiff's subjective complaints. He found that the objective evidence did not substantiate the presence of disabling pain. He gave great weight to the consultative examination of Dr. Purswani and his findings [Tr. 17]. The ALJ found that the plaintiff had the residual functional capacity to perform a full range of light work [Tr. 16].[1] Utilizing rule 202.17 of the Medical-Vocational Guidelines, he found that the plaintiff was not disabled [Tr. 17].

Plaintiff asserts that the ALJ erred in failing to give appropriate weight to the plaintiff's testimony and in failing to consider the combined effect of the plaintiff's many impairments.

With regard to the first assignment of error, plaintiff argues that the ALJ must give appropriate weight to lay testimony regarding pain when it is consistent with medical evidence. Here, as in most cases, the ALJ found that the plaintiff had severe impairments which could be expected to cause some pain, but that the evidence did not substantiate plaintiff's complaints of disabling pain. As noted by the ALJ and the Commissioner, none of the plaintiff's treating sources ever indicated that he could not perform work due to pain. The best this comes to is the opinion of Dr. Rao in September 2006 that the plaintiff should

---

[1] Light work involves lifting a maximum of 20 pounds, with frequent lifting of up to 10 pounds, along with a good deal of standing and/or walking.

7

perform "restricted work." Light work *is* restricted work, and a rather substantial degree of restriction. Further, it must be presumed unless the record indicates otherwise that a medical assessment such as that expressed by Dr. Purswani takes into account the amount of discomfort which the physician legitimately believes a person experiences in lifting, carrying, walking and the like. Dr. Purswani was not speaking of lifting 30 pounds in the abstract, but of lifting 30 pounds in a work setting. The Court concludes that the ALJ gave appropriate weight to the plaintiff's allegations of pain.

As for the allegation that the ALJ did not properly evaluate the combined effect of the plaintiff's impairments, it is true that a combination of impairments can render a person disabled even if none of them individually would do so. However, that is precisely the reason for obtaining a fair consultative examination by someone such as Dr. Purswani, who examined all of the plaintiff's limitations and their *overall* effect on the plaintiff's vocational capabilities.

Dr. Purswani and the other medical evidence provides substantial evidence to support the finding of the ALJ that the plaintiff could perform a full range of light work. Accordingly it is RESPECTFULLY RECOMMENDED, that the plaintiff's Motion for Summary Judgment [Doc. 8] be DENIED, and that the defendant Commissioner's Motion for Summary Judgement [Doc. 12] be GRANTED.[2]

Respectfully submitted:

---

[2] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).

s/ Dennis H. Inman  
United States Magistrate Judge